[Dkt. No. 77]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Camden Vicinage

_____
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            v.                      : Crim. No. 18-587 (RMB)
                                    :
ANTHONY ROMANO                      : **OPINION**
_____ :

This matter comes before the Court upon Defendant Anthony Romano's Motion to Reduce Sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). The Court having considered the parties' submissions, and for the reasons discussed below, denies the Motion.

Defendant Romano plead guilty on August 1, 2019, to a one-count Information charging him with conspiracy to commit money laundering, contrary to Title 18, United States Code, Section 1956(a)(3)(B), and in violation of Title 18, United States Code, Section 1956(h). The Government and Romano entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, whereby the parties stipulated that a sentence of imprisonment between 43 and 75 months and three years of supervised release was reasonable. Docket Entries 53, 55. On September 26, 2019, this Court sentenced Romano to 54

months' imprisonment and a term of supervised release of three years. Docket Entries 58, 59.

Defendant contends that his underlying health conditions and the unprecedented circumstances presented by the COVID-19 pandemic present extraordinary and compelling reasons for this Court to grant the relief request. He argues that although he is not in advanced age at 54, he is particularly vulnerable to COVID-19 as a result of multiple heightened risk factors. Specifically, he has a rare genetic blood disorder called Von Willebrand's disease, type 1, which impacts the blood's ability to clot, and, thus, "ha[s] an altered immune system and greater care should be taken to avoid exposures to others who are sick." CSL Behring, Coronavirus: Bleeding Disorder Patient Groups Respond, Mairs, Patrick, (Mar. 20, 2020) (available at https://www.cslbehring.com/vita/2020/coronavirus-bleeding-disorder-patient-groups-respond).

Defendant further contends that because he has a blood disorder, the literature shows that he is "at an increased risk of developing serious COVID-19 symptoms." Hemophilia News Today, Information About COVID-19 for Hemophilia Patients, (May 13, 2020) (available at https://hemophilianewstoday.com/information-about-covid-19-for-hemophilia-patients/); see also Escher R., Breakey N., Lammle B. Severe COVID-19 infection associated with endothelial activation [published online ahead of print, 2020

2

Apr. 15] Thromb. Res. 2020;190:62. (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7198395/) (case study of patient with von Willebrand disease who experienced substantial clotting issues with COVID-19 progression).

Defendant introduces letters from his doctors who confirm that he is immune compromised and have recommended "avoiding at all costs exposure to COVID-19 and other infectious diseases that can potentially cause him severe effects from the airborne illnesses." June 11, 2020, Dr. James M. Orsini Letter, Docket No. 77-8; see also June 8, 2020, Dr. Ronald G. Frank Letter, ("In view of his conditions, his immune system is compromised and he is at greater risk."), Docket No. 77-9. In addition to this rare genetic disorder, Defendant has Gleason level 6 prostate cancer which further shows he is immune-compromised.

Currently, Defendant Romano is housed at the Butler County jail in Hamilton, Ohio. As of the date of this Opinion, it appears that he is still in the Ohio facility. See www.bop.gov (inmate locator); butler.miamivalleyjails.org (persons currently in custody). Thus, although much of the parties' submissions focus on FCC Butler, the federal correctional institution to which he has transferred after sentencing, the Court focuses on the Ohio facility. First, that is the institution in which he is currently housed and may stay housed there for some time because of the current COVID-19 pandemic. Second, even if

3

Defendant were transferred, there is no compelling evidence that he will be returned to FCC Butler, particularly when the number of cases of COVID-19 in the inmate population is as dire as Defendant says.  Indeed, the evidence before the Court suggests that it may be some time before Defendant Romano is transferred.  See Docket No. 79-2 ("the movements to BOP have been very limited here in S/OH . . . that will change shortly as BOP's response to the pandemic is currently evolving.")  See also Docket No. 79-3 ("We can't predict where he will go when he comes back to Butler, it will likely be the same place but we don't know.")

The Government has introduced evidence of the measures Butler County Jail has taken to prevent the spread of the coronavirus.  Those measures are set forth in an e-mail to the Government and recited below:

> We continue to quarantine all new incoming inmate[s] for 14 days.  Manual temperature checks along with a complete questionnaire about [C]ovid symptoms every time inmates and officers enter or leave the compound.  Installed a 15 thousand dollar temperature monitor in the intake vestibule that automatically alerts when someone walks by with a temperature.
> Inmates must wear masks at all times when out of their cell.
> Staff must wear masks at all times when away from their desks.
> Installed hand sanitizer stations throughout the compound.
> Recreation has been broken down to only 24 minutes at a time.  All surfaces that inmates have contact with are sanitized after each recreation, 9 times a day or more.

> Posted signs in the housing units and electronic communication kiosk in both English and Spanish about handwashing, how to cough, signs and symptoms of Covid.  Endless supply of soap for handwashing.  Population of low level offenders has been decreased.  Giving OR bonds when possible.  Added video court to reduce moving inmates from housing unit.  Added video attorney visit to reduce movement.  Require attorneys to wear full PPE (goggles, masks, gloves).  Suspended outside visitors (programming, clergy, non-essential)[.]
> Medically isolate in a separate housing unit any inmates that show any signs or symptoms of Covid.
> Added vehicle sanitation station.
> Medical cells with negative pressure/HEPPA filter.
> If tested positive must have 2 negative results before returning to general population.
> Assigned an officer to sanitize door handles and surfaces in common areas.

See Docket 79-4, at 1.

As of July 13, 2020, the Ohio facility had had two positive inmate cases on two inmates on medical isolation due to symptoms. Id.  Five days earlier, on July 8, 2020, six inmates had been in medical isolation.  See Docket 79-4.

**DISCUSSION**

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, Dillon v. United States, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exists "extraordinary and compelling reasons" to reduce a sentence.  The statute provides, in relevant part, that:

5

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> 18 U.S.C. § 3582(c) (emphasis added).  As such, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.

This Court may only grant a motion for reduction of sentence under the FSA if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), as revised (Apr. 8, 2020).  This is a statutory requirement that this Court may not waive.  See, e.g., Raia,

6

2020 WL 1647922 at *2; Massieu v. Reno, 91 F.3d 416, 419 (3d Cir. 1996); Ross v. Blake, 136 S. Ct. 1850 (2016).

On May 14, 2020, Defendant, through his counsel, submitted a letter to the BOP requesting that Romano be considered for release to home confinement. See Docket No. 79, Ex. A. The BOP responded via letter, dated May 20, 2020, explaining that the BOP was prioritizing requests for release for inmates "who either: (1) have served 50% or more of their sentence, or (2) have 18 months or less remaining on their sentences and have served 25% or more of their sentences." See Docket No. 77-7, at 2. Because more than 30 days have passed and the BOP has not responded (presumably because Defendant does not meet either of the BOP's criteria for priority), Romano has exhausted his administrative remedies. United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, once the exhaustion requirement has been satisfied as it has here, grant a defendant's motion to reduce his term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction," and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

7

The Defendant bears the burden to establish that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; cf.18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

8

"extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Second, the standard is met if the defendant is:

> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
>       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Id. § 1B1.13, cmt. n.1(A)(ii).  The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. Id. § 1B1.13, cmt. n.1(B)-(C).  The note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." Id.§ 1B1.13, cmt. n.1(D).

   Here, the medical records reflect that the Defendant is not undergoing any treatment or taking any medications for his blood disorder or his prostate cancer diagnosis.  As the medical

9

records indicate, the "tumor is small and expected to grow slowly" and the Defendant can "live with cancer without worry about reducing the quality of life. Docket No. 79-5, at 77. (under seal). As it appears the Defendant had been misinformed about the results of his tests, the evidence before the Court demonstrates that Defendant will not require additional treatment for his prostate cancer during his expected term of incarceration. See id. In this Court's final analysis, it does not seem – thankfully – that the Defendant's medical condition has worsened since the time of sentencing and that he is receiving proper medical care and surveillance, such as testing of PSA levels. Give his ability to take necessary precautions, the medical attention he is receiving, and the extensive preventative measures Butler County Jail authorities are taking to prevent the spread of COVID-19, the Court is not persuaded that Defendant Romano's circumstances constitute "extraordinary and compelling" reasons to grant compassionate release.

Even assuming, arguendo, that Defendant had established an "extraordinary and compelling reason" to reduce his sentence, the Court finds that he has failed to demonstrate that he merits release under the § 3553(a) factors. Under the applicable policy statement, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See §

10

3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

A sentence reduction here would be inconsistent with the § 3553(a) factors. First, a reduction would fail to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a). As the Court discussed at sentencing, over a four-year span, Romano engaged in two very serious and distinct felony offenses, including one that was violent in nature.  First, he laundered funds through check cashing businesses and established business accounts. In the relatively short span of six months, Romano repeatedly laundered what he believed to be over $550,000 in purported narcotics proceeds.  Second, he admitted to orchestrating a Hobbs Act robbery of TPS on April 19, 2014. Romano provided his co-conspirators with information about the timing of the cash delivery to TPS, knew that his co-conspirators had access to a handgun, and stood to profit from the stolen proceeds.

The "history and characteristics of the defendant" and the need to protect the public also counsel against any sentencing reduction.  While Romano was considered to have a criminal history score of zero at the time of sentencing, this calculation was due to the age of the prior offenses, not due to the absence of prior offenses.  In fact, between 1993 and 2001,

11

Romano sustained four felony convictions related to conspiracies to promote gambling and the distribution of controlled substances. In or around 1993 and 1994, he was sentenced to a lengthy period of incarceration for these crimes. Thus, Romano returned to a life of crime at least four years prior to his arrest.

This Court considered Romano's prostate cancer, blood disorder and high cholesterol in imposing a sentence of 54 months' imprisonment, a significant departure from the advisory Guideline range of 108 to 135 months. The need for deterrence and the need to punish the Defendant,[2] also weigh against reducing Defendant's sentence. He has served 8 months of his 54-month sentence and, so, granting release would be yet another substantial variance. This is in contrast to the cases that Defendant relies upon where the defendants had already served a significant portion of their sentences thereby addressing and satisfying such factors as deterrence and the seriousness of the offense.

---

[2] Defendant contends that he is being unfairly punished because he is now far away from his wife and daughter, he has lost his father and sister, and he is housed with multiple violent offenders. Sadly, absent evidence that Defendant is being denied essential and proper care, this is a harsh reality of prison life. (Defendant alludes to the fact that he is being denied "programming or treatment.") Docket No. 80-4. It is not clear what he is referring to but the Court notes that the records show he is being given medical treatment. If the Court has misconstrued Defendant's position, he can certainly clarify it or address it with the Butler County officials.

The Court does not take lightly Defendant's fear of contracting COVID-19. It is a fear that permeates all of society, both inside and outside of a prison. Here, the Butler County jail has been effective in containing the spread, and if the Defendant is transferred to a facility that he can prove poses a risk to his health under the legal standards set forth above, he may certainly ask this Court to revisit the issue. On the record before the Court, however, he has failed to persuade the Court that he is entitled to a sentence reduction.

The Motion is therefore DENIED.

s/Renée Marie Bumb_____<br>
RENÉE MARIE BUMB<br>
United States District Judge

Dated: August 17, 2020

13